UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Allianz Life Insurance Company of North America, and North American London Underwriters,

Plaintiffs,

Civ. File No. 01-480 (PAM/JGL)

v.

**MEMORANDUM AND ORDER**

Thomas G. Brown,

Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the following reasons, the Motion is denied in part and granted in part.

## BACKGROUND

This case arises out of a series of financial transactions involving reinsurance. Plaintiff Allianz Life Insurance Company of North America ("Allianz"), through its wholly owned subsidiary North American London Underwriters ("NALU"), invested in several insurance "syndicates" that comprise the well-known insurer Lloyd's of London. These syndicates issued policies covering specific insurance risks, and the corporate investors in the syndicates assumed the liability (up to the amount of their investment) and, similarly, received the profit from each syndicate.

When NALU first invested in these syndicates, it limited its investment to syndicates

FILED JUN 07 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

insuring personal accident loss, which is Allianz's main business. Lloyd's soon required NALU to diversify its syndicate investments, however, and NALU and Allianz turned to Defendant Thomas Brown for advice on which syndicates might make for profitable investing. At the time, Brown was the CEO of Duncanson & Holt, a reinsurance management firm based in New York City. Brown worked on many reinsurance deals with Allianz for more than 10 years prior to the Lloyd's syndicate investments, and Brown testified that he and Allianz had a "significant business relationship." (Brown Dep. at 8.) Brown had also been involved in the reinsurance syndicates with Lloyd's for many years, first as an individual investor and then in the corporate investment program.

According to Plaintiffs, in 1996 Allianz decided to increase its investment in the Lloyd's syndicates, but also decided to bring in reinsurers to share the risk and to provide additional capital. With Brown's help, NALU located two Lloyd's syndicates, numbers 529 and 1093, to invest in. These syndicates were managed by the Sterling Agency, which was in turn controlled by Brown. NALU invested £3 million in syndicates 529 and 1093 for the 1996 underwriting year. NALU had a third-party reinsurer insure the entire amount of that investment.

In 1997, NALU once again decided to invest in syndicates 529 and 1093. Although Allianz wanted to limit the investment to £3million, Lloyd's required the total investment to be £5 million. As it had the prior year, Allianz and NALU wanted the entire investment reinsured by a third party. Allianz, NALU, and Brown began to discuss whether one of the

insurance entities controlled by Brown could operate as a reinsurer of NALU's extra £2 million investment in these syndicates.[1] Brown ultimately promised that one of the entities would reinsure £2 million of risk for each syndicate. In order to do so, that entity had to post a £1.1 million letter of credit with Lloyd's by a certain date.

The date passed and the entity did not post the letter of credit, nor did the entity contribute any of the promised capital. Despite this, NALU and Brown agreed that one of the three entities would once again act as reinsurer for syndicates 529 and 1093 for 1998. According to Allianz and NALU, Brown again promised that the entities he controlled would reinsure £2 million of NALU's investment. Once again, however, neither Brown nor the entities posted the required letter of credit.[2] In fact, according to Plaintiffs, at some point in 1997 Brown knew that none of the entities were financially stable enough to secure a letter of credit or to provide the capital needed to reinsure NALU's investment in syndicates 529 and 1093. Brown did not inform Allianz of this fact.

The inevitable occurred, and syndicates 529 and 1093 suffered large losses. Brown did not pay NALU for these losses. In 2000, Lloyd's revoked the Sterling Agency's license

---

[1] Brown had a controlling interest in Rochdale Insurance Company of New York ("Rochdale"), Margent Group, Inc. ("Margent"), and Legend Reinsurance – Bermuda ("Legend"). Allianz contends that Brown did not specify which of the three entities would operate as reinsurer for NALU's investments in syndicates 529 and 1093, despite its repeated requests that he do so. Brown asserts that he and Allianz only discussed the possibility of Rochdale participating in these syndicates.

[2] Had Brown or one of the three entities posted the letters of credit for the 1997 transactions, additional letters of credit would not have been required for the 1998 transactions.

to underwrite business. The losses to Allianz and NALU attributable to Brown's entities on syndicates 529 and 1093 total more than £2 million. Allianz has paid Lloyd's for those losses and now seeks to recover that amount from Brown.

The Complaint raises three claims against Brown. Count one claims that Brown committed fraud when he represented to Allianz and NALU "that he had the financial ability and genuine intention to provide" letters of credit for 1997 and 1998. (Compl. ¶ 41.) Count two alleges that Brown voluntarily assumed a fiduciary duty to Allianz and NALU with respect to NALU's participation in syndicates 529 and 1093 and then breached that duty by advising Allianz and NALU to take on additional risk when he knew that he could not post letters of credit to reinsure the additional risk. (Compl. ¶¶ 47-48.) Finally, count three contends that Brown should be estopped from denying responsibility for the letters of credit because he represented that he would secure such letters of credit, and Allianz and NALU relied on that representation to their detriment. (Compl. ¶¶ 51-55.) Brown seeks summary judgment on all of these claims.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated,

"summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Brown offers a plethora of reasons why summary judgment is appropriate. First, he argues that Allianz has no standing to sue and that the only entity with standing, NALU, has not complied with the corporate filing requirements which would allow it to bring suit in Minnesota.[3] Second, Brown asserts that he was at all times acting as an agent for a disclosed principal and cannot be held personally liable for wrongs committed by that principal. Last, he contends that Plaintiffs' claims fail on the merits.

**A. Standing and Capacity to Sue**

Brown contends that a corporation has no standing to vindicate an injury inflicted

---

[3] The parties seem to agree that Minnesota law governs the dispute, or that there is no conflict between Minnesota law and the law of other potential fora, making a choice-of-law analysis unnecessary.

solely on its subsidiary. Classic Communications, Inc. v. Rural Tel. Serv. Co., 956 F. Supp. 910, 916 (D. Kan. 1997). In this case, however, Allianz does not argue that Brown's misrepresentations and promises were made solely to NALU and injured NALU alone. Indeed, all of the counts of the Complaint make clear that Brown made misrepresentations to both Allianz and NALU, intending that both Allianz and NALU rely on those misrepresentations, and that both Allianz and NALU were injured. It is also clear that Brown knew that Allianz would be funding all of NALU's investments in the syndicates, so that any losses suffered would be suffered by Allianz. The evidence presented shows that Allianz has standing to raise the claims in the Complaint.

According to Brown, NALU is without capacity to sue because it has not filed the required certification of authority in Minnesota to allow it to bring suit here. Minn. Stat. § 303.20. Allianz did not respond to this argument in its papers, but offered the Court argument on this point at the hearing. Although the statute reads as if a foreign corporation without a certificate of authority is barred from filing suit in any court in Minnesota, Minnesota courts have interpreted this statute as posing a defense that, if not plead in the answer, is deemed waived. See Cochrane v. Tudor Oaks Condo. Project, 529 N.W.2d 429, 433-34 (Minn. Ct. App. 1995) (noting that "the right to challenge capacity to sue is waived if it is not timely asserted"). Brown did not assert this defense in his Answer and thus has waived his right to do so.

**B. Brown's Personal Liability**

Brown's argument that he cannot be personally liable to Allianz or NALU is grounded in the law of agency. It is well-settled that an agent of a disclosed principal cannot be personally liable on a contract he makes for that principal. Restatement (Second) of Agency § 4. However, here Allianz and NALU do not claim that Brown entered into a contract on behalf of any entity. Rather, the allegations are that Brown himself made misrepresentations on which Allianz and NALU relied to their detriment. It is difficult to understand how Brown's citations to contract and agency law are relevant to the tort and equitable claims made in the Complaint. Brown's contention that he cannot be personally liable to Allianz and NALU has no merit.

**C. Merits**

Brown asserts that each of Plaintiffs' claims fail on the merits. He contends that the fraud claim fails because there is no evidence that Brown represented that he personally had the ability to post the letters of credit, or that, at the time the representations were made, he knew that none of his entities were able to post the letters of credit. He also argues that the fraud claims fail because, in any event, Allianz and NALU have not established that their reliance on his alleged representations were reasonable. With respect to the breach of fiduciary duty claim, Brown contends that there was no fiduciary relationship between the parties. Finally, Brown claims that under agency law he cannot be personally liable on a promissory estoppel theory.

1. Fraud

In Minnesota, a common-law fraud claim consists of five elements: (1) a false representation or omission of a material fact; (2) made with knowledge of the falsity of the representation; (3) made with the intent to induce reliance; (4) the representation or omission in fact induced reliance; and (5) the person relying was damaged thereby. Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986). The person claiming fraud must also show that his or her reliance on the misrepresentation or omission was reasonable. Northern Petrochem. Co. v. United States Fire Ins. Co., 277 N.W.2d 408, 410 (Minn. 1979). Brown argues that Plaintiffs have failed to prove both the first and second elements and that their reliance was reasonable.

In his first contention, Brown obfuscates the issue. He claims that because he did not represent that he personally had the ability to post the letters of credit, there is no genuine issue as to whether he knowingly made a false representation or omission. Plaintiffs allege, however, that Brown represented that one of the entities he controlled could post the letter of credit, not that Brown personally could do so. Allianz and NALU also allege that at the time he made these statements, Brown did not know whether his statements were true or not and that he failed to inform Allianz and NALU when he discovered that the entities did not have the financial wherewithal to post the letters of credit. Taking the evidence in the light most favorable to Plaintiffs, they have succeeded in proving the first two elements of their fraud claim.

Whether Plaintiffs' reliance on Brown's statements or failure to make statements was reasonable is another matter. Certainly, Allianz and NALU were justified in relying on Brown's representations with respect to the 1997 underwriting year, the first year he promised to secure letters of credit from one of the entities he controlled. He failed to do so, however, and that fact was known to Allianz and NALU when he again promised to secure such letters for the 1998 underwriting year. It is surprising that Allianz and NALU would once again take Brown at his word, considering that they asked him repeatedly to post the letters for 1997 and he did not respond to those requests. Allianz is not a naive newcomer to the reinsurance business but is a multi-million-dollar company that has participated in reinsurance investments for more than 20 years. It is not reasonable for a company in Allianz's position to rely on Brown's assertions with respect to the 1998 letters of credit, given his utter failure to perform on his promises about the 1997 letters of credit. Plaintiffs' fraud claim fails with respect to the 1998 letters of credit.

2. Fiduciary Duty

The existence of a fiduciary relationship is a question of fact. Parkhill v. Minnesota Mut. Ins. Co., 995 F. Supp. 983, 991 (D. Minn. 1998) (Doty, J.). As such, it is not generally amenable to resolution on a motion for summary judgment. See Fed. R. Civ. P. 56 (providing for summary judgment in cases in which no fact issues remain to be resolved). If, however, Plaintiffs have utterly failed to raise any facts which might indicate the existence of a fiduciary duty, summary judgment may be appropriate. Cf. Thompson v. Olsten

Kimberly Qualitycare, Inc., 33 F. Supp. 2d 806, 816 (D. Minn. 1999) (Tunheim, J.) (noting that, although malice is usually question of fact for jury, "summary judgment is appropriate if there is no evidence in the record from which a jury could conclude that malice was present").

Here, Plaintiffs have met their burden to show that there is a genuine issue of fact as to whether Brown was acting in a fiduciary capacity by advising NALU about its investment in syndicates 529 and 1093. There is evidence that Allianz regularly called on Brown for his advice and counsel on reinsurance investments. (Pls.' Opp'n Mem. at 32 (citing Rasmussen Dep. at 57-58, 63-64).) Moreover, the fact that the syndicates at issue were managed by the Sterling Agency and that Brown controlled the Sterling Agency might lead an investor to believe that Brown possessed some sort of expertise on the syndicates and that his advice would be worth heeding. Brown is not entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim.

3. Promissory Estoppel

Brown's arguments on the promissory estoppel claim are the same as those he raised as to the Complaint generally. He claims that he cannot be personally liable to Allianz or NALU on the promissory estoppel claim because he was acting on behalf of one of the entities he controlled and because Allianz and NALU knew that he was acting as such. Again, this argument is unavailing. Allianz and NALU seek to hold Brown personally liable for promises he made, not for promises that another entity made. Merely because the

promise involved another entity's financial health does not diminish the fact that it was Brown making the promise. Further, Brown does not dispute Plaintiffs' allegation that Brown controlled these entities. Thus, his promise that one of the entities would perform is the same as the entity itself promising performance. Brown is not entitled to summary judgment on Plaintiffs' promissory estoppel claim.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court finds that Defendant is not entitled to summary judgment on any claim except Plaintiffs' claim of fraud arising out of the 1998 letters of credit.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Doc. No. 29) is **DENIED in part** and **GRANTED in part** as set forth above.

Dated: June 7, 2002

Paul A. Magnuson
United States District Court Judge

## *Featured Speakers Include:*

**District of Minnesota**

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

**United States Bankruptcy Court**
**District of Minnesota**

Judge Robert J. Kressel

Application Pending for 7.5 CLE Credits including
2 Ethics and 1 Bias Credit

The Minnesota Chapter of the Federal Bar Association
c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

MINNESOTA CHAPTER OF
THE FEDERAL BAR
ASSOCIATION

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

**June 19, 2002**
**8:00 am—5:15 pm**

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | **Registration** |
| 8:00-8:15 | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| 8:15-9:00 | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| 9:00-9:45 | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| 9:45-10:00 | **Morning Break** |
| 10:00-10:45 | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| 10:45-11:45 | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| 11:45-12:45 | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| 1:30-2:15 | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| 2:15-3:15 | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office)*;** **Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| 3:15:3:30 | **Afternoon Break** |
| 3:30-4:15 | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| 4:15-5:15 | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

☐ Member $195.00

☐ Non-Member $225.00

Name ____________________

Firm/Employer ____________________

Address ____________________

____________________

Phone ____________________

E-Mail ____________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building